UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TRYN PARKER,

        Defendant.

REPORT & RECOMMENDATION

08-CR-6270L

---

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated June 23, 2009, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 40).

This prosecution was commenced on December 3, 2008, with the filing of a criminal complaint charging the defendant, Tryn Parker ("Parker"), with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. (Docket # 1). Two weeks later, a seven-count indictment was returned against Parker. (Docket # 7). That indictment was superseded on June 18, 2009, with a nine-count indictment. (Docket # 39). Count One of the superseding indictment alleges that between September 1, 2007 and November 30, 2007, Parker conspired to commit bank fraud, in violation of 18 U.S.C. § 1349. (*Id.*). Counts Two through Nine allege eight substantive bank fraud counts, in violation of 18 U.S.C. § 1344. (*Id.*).

Currently before this Court are Parker's motions to suppress evidence relating to three photographic identifications and to dismiss the indictment on the basis of vindictive

prosecution. (Docket ## 10-12, 14, 32).[1]  The Court has conducted a *Wade* hearing relating to the out-of-court identifications challenged by Parker and has declined to conduct an evidentiary hearing on Parker's claim of vindictive prosecution.

The following constitutes this Court's Report and Recommendation with respect to the pending motions.

## HEARING TESTIMONY

Hearings were held before this Court on June 23 and July 9, 2009.[2]  The government called as witnesses Investigator Frederick Austin ("Austin") of the Monroe County Sheriff's Office and Tomeka Jones ("Jones").[3]  The defendant called no witnesses.

### I. Investigator Frederick Austin

Austin testified that for the past four years he has worked as an investigator with the Economic Crimes Unit of the Monroe County Sheriff's Office, investigating financial crimes,

---

[1] Parker's omnibus motion also sought, *inter alia*, a bill of particulars, discovery and inspection, *Jencks* material, the preservation of rough notes and rulings on evidentiary matters under Rule 404 of the Federal Rules of Evidence. (Docket ## 13, 15).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on May 26, 2009. (Docket # 31).

[2] The transcript for the hearing on June 23, 2009 will be referred to throughout as "Tr.A".  The transcript for the hearing on July 9, 2009 will be referred to as "Tr.B".  The transcript of the May 26, 2009 motion argument will be referred to as "Tr.C".

[3] The government originally planned to present evidence of three photographic identifications of Parker. (Tr.A 3-4).  Two of the identification procedures were conducted by Investigator Scott Peters, who, by the time of the hearing, had been deployed to Iraq and was not available to testify. (*Id*.).  As a result, the government sought to subpoena the individuals who had identified Parker in the procedures, Tomeka Jones and Renee Louis, to testify at the hearing.  Tomeka Jones was subpoenaed and testified; however, the government was unable to locate Renee Louis. (Tr.B 23).  Therefore, on July 9, 2009, I recommended that Parker's motion to suppress Louis's identification be granted because the government had not met its burden of establishing its reliability. (Tr.B 25).

such as identity and credit card theft. (Tr.A 12-13). Austin testified that he began investigating Parker in November 2007. (Tr.A 21-22). As part of that investigation, on December 14, 2007, Austin interviewed a witness named Tameka King ("King"). (Tr.A 13). The interview took place in the Economic Crimes Unit Office, located at 30 West Broad Street. (Tr.A 18). Two other investigators from the Economic Crimes Unit were present in the interview room, but did not participate in the interview. (Tr.A 18).

During the interview, King agreed to participate in a photographic identification procedure. (Tr.A 18). King was shown a photographic array consisting of six photographs. (Tr.A 14; Government's Exhibit ("G. Ex.") 1). Austin explained that the array had been produced by a computer program that selected six photographs of individuals displaying similar physical and facial features to those of Parker, such as sex, race, height and weight. (Tr.A 15-17; G. Ex. 2).

Austin testified that he showed the array to King while she was seated next to him at his desk. (Tr.A 19). He told her that he had six photographs on one sheet of paper and asked her to review them. (*Id.*). He advised King that "the person may or may not be a part of these photos. Take your time. If you recognize a picture, point that person out and verbally tell me that you identify the person." (*Id.*). After reviewing the photographs for "about a minute," King selected Parker's photograph and indicated that the photograph depicted a person whom she knew as "Tryn." (Tr.A 19-20). King then circled Parker's photograph, initialed it, and signed and dated the array. (Tr.A 21; G. Ex. 1).

During the interview, Austin informed King that she was suspected of committing two felony acts of bank fraud. (Tr.A 22, 24). He advised her that she would be arrested at a later

date, but that she was free to leave the interview "at any time." (Tr.A 23). Austin testified that no threats or promises were made to King to induce her to identify a particular photograph and that he did not tell her whom to select from the array. (Tr.A 21).

## II. Tomeka Jones

This Court also heard testimony from Tomeka Jones ("Jones") concerning an identification procedure conducted by Investigator Scott Peters ("Peters") on December 12, 2007.[4] (Tr.B 3).

Jones testified that on December 12, 2007, Peters came to her house and asked her if she would accompany him to the Monroe County Public Safety Building in order to be interviewed in connection with an ongoing investigation. (Tr.B 10-11). Jones agreed, and Peters transported her downtown to the police headquarters. (*Id.*). Jones testified that when they arrived at the Public Safety Building, Peters took her into a room where several other investigators where present; none of the other investigators spoke to Jones. (Tr.B 3-4, 5-6, 13-14, 15). Peters showed her six sheets of paper, each of which contained six photographs, and asked her if she recognized anyone. (Tr.B 5-6, 16). After reviewing the photographs for "about ten minutes," Jones selected a photograph and identified the individual depicted as "Magic."[5] (Tr.B 6). Jones then circled the photograph, initialed it and wrote the time and date on the array.

---

[4] As discussed above, Investigator Peters was not available to testify at the hearing due to his deployment to Iraq. (Tr.A 4-6).

[5] During the hearing, Jones identified Parker as the individual whom she knew as "Magic." (Tr.B 6-7).

4

(Tr.B 7, G. Ex. 3). Jones testified that Peters did not tell her whom to select, nor did he threaten her or make her any promises relating to the procedure. (Tr.B 8, 16).

Jones further testified that she recognized the photograph of "Magic" because she had met him on multiple occasions before December 12, 2007.[6] (Tr.B 8-9).

## DISCUSSION

### I. Motion to Suppress Photographic Identifications

Parker seeks to suppress evidence relating to the photographic identifications of him made by King and Jones. (Docket # 32). An out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

In determining whether to exclude a pretrial identification, a court must first consider whether the identification procedure was unduly suggestive. If so, the court must then determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*,

---

[6] On direct examination, Jones testified that she had met Parker approximately seven times (Tr.B 9); on cross-examination, she testified that she had met him approximately twenty times, each time for about one hour, but could not recall where or when those meetings had occurred (Tr.B 18-20).

5

923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

At the government's request, this Court conducted a bifurcated *Wade* hearing concerning King's identification (Docket ## 41, 43, 44), and the government offered evidence relating only to the issue of the suggestiveness of the identification procedure.[7] In view of Investigator Peters's unavailability to testify, no bifurcation was possible with respect to Jones's identification.

I turn first to the identification procedure involving King on December 14, 2007. On that date, Investigator Austin met with King in his office, where he displayed a six-photograph array. He asked her whether she recognized any of the individuals depicted. King promptly identified the photograph of Parker as the individual whom she knew as "Tryn." (Tr. 19-20; G. Ex. 1).

On the record before the Court, I find that the procedure involving King was not suggestive. King was shown a six-photograph array, rather than a single photograph, and was asked only to identify anyone whom she recognized. Parker's photograph, like the others in the array, is a frontal image from the shoulders to the top of his head. All of the men depicted appear to be of similar age and coloring and have similar closely-cut hairstyles and moustaches and goatees. (G. Ex. 1). *See United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) ("[t]he fairness of a photographic array depends on a number of factors, including the size of the

---

[7] A *Wade* hearing refers to a hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether an out-of-court identification resulted from an impermissibly suggestive procedure and, if so, whether it is independently reliable. If the procedure was not suggestive, the court need not proceed to the second phase of the hearing (whether the witness had an independent basis upon which to make the identification).

array, the manner of presentation by the officers, and the array's contents"), *cert. denied*, 501 U.S. 1233 (1991); *United States v. Marrero*, 705 F.2d 652, 655 n.5 (2d Cir. 1983) (six is an acceptable number for a photographic array); *United States v. Joseph*, 332 F. Supp. 2d 571, 582 (S.D.N.Y. 2004) (photographic array was not unduly suggestive where array contained six photographs of individuals of similar ethnicity, age, hairstyle and facial hair). *See also United States v. Thai*, 29 F.3d 785, 808 (2d Cir.) ("principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit'") (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)), *cert. denied*, 513 U.S. 993 (1994).

I conclude that the identification procedure involving Jones also was not suggestive. As with King, Jones was asked merely whether she recognized anyone depicted in the arrays presented. The array containing Parker's photograph was identical to the array shown to King, except that the photographs occupied different positions in the array. (*See* G. Exs. 1 and 3). Moreover, even if the identification procedure involving Jones had been suggestive, her identification of Parker was nonetheless independently reliable. Jones testified that she had had over one-half dozen personal encounters with Parker, each lasting approximately one hour. I find that Jones's out-of-court identification of Parker was sufficiently reliable to defeat Parker's due process challenge. *See United States v. Maldonado-Rivera*, 922 F.2d at 973 ("[t]he linchpin for admissibility of identification testimony is reliability") (citing *Manson v. Brathwaite*, 432 U.S. at 106-07 n.9, 114).

In sum, I find that neither photographic identification challenged by Parker was impermissibly suggestive and that Jones's was also independently reliable. On this basis, I recommend that Parker's suppression motions be denied.

II. **Vindictive Prosecution**

Parker has filed four *pro se* motions seeking to dismiss the indictment on the grounds that it is a product of vindictive prosecution. (Docket ## 10-12, 14). Specifically, Parker alleges that the government has initiated this prosecution in order to retaliate against him for having avoided punishment in a prior federal prosecution and having received a lenient sentence in a prior state prosecution. (Docket # 38 at 4).

A. **Factual Background**

In March 2005, Parker pled guilty to bank fraud in violation of 18 U.S.C. § 1344 and was sentenced to five years' probation by United States District Judge Charles J. Siragusa. (Docket # 26 at 2). In July 2006, the United States Probation Office filed a violation report with the court alleging that Parker had violated the terms of his probation. (*Id.*). At the violation hearing, Parker absconded and a bench warrant for his arrest issued. (*Id.*; Tr.C 11-12). One year later, in 2007, Parker was arrested in Alabama and returned to the Western District of New York on the warrant. (Tr.C 12). During the course of the ensuing probation violation proceeding, the district court determined that Parker's sentence was illegal. (*Id.*; Docket # 26 at 2-3). Following that determination, the court ordered the United States Probation Office to cease supervising Parker, and no further proceedings were conducted with respect to the violation proceeding. (Tr.C 12).

The following year, in 2008, the government filed a new criminal complaint charging Parker with criminal possession of a forged instrument on January 3, 2008. (Docket # 26 at 3; Tr.C 13-14). In May 2008, United States Magistrate Judge Jonathan W. Feldman dismissed that complaint without prejudice. A short while later, the Monroe County District Attorney commenced state charges against Parker based upon Parker's alleged possession of the same counterfeit check. (Tr.C 14). In November 2008, Parker pled guilty to the state charges and was sentenced to a term of probation. (*Id.*; Docket # 38 at 4).

One month later, on December 3, 2008, the government filed the instant criminal complaint charging Parker with conspiracy to commit bank fraud between August 2007 and January 2008.[8] (Docket # 1).

As evidence of the government's purported animus towards him, Parker alleges that federal authorities, including the case agent in this case, engaged in a "manhunt" to find Parker after he fled in the midst of his 2006 federal probation violation proceedings, during which they "harassed," "intimidated" and "threatened" members of his family and friends in an effort to locate him. (Docket # 38 at 2-4). He also alleges that after it became clear that the May 2008 federal complaint would be dismissed by Judge Feldman, the federal prosecutor prevailed upon state prosecuting authorities to charge Parker with state charges arising from the same conduct that was the subject of the federal complaint. Finally, Parker claims that the instant charges were initiated to punish him for receiving a term of probation, rather than imprisonment,

---

[8] Parker has not moved to dismiss the pending indictment on double jeopardy grounds. In fact, although the initial complaint charged a bank fraud conspiracy extending through January 2008 (the month during which the conduct giving rise to the state charge occurred); the pending indictment has narrowed the chronological scope of the conspiracy to the period between September 1, 2007 and November 30, 2007. (Docket # 39). The substantive bank fraud violations are also alleged to have occurred during this September through November period. (*Id.*).

9

on the state charges. As to this claim, Parker alleges that the federal prosecutor and the case agent were overheard expressing disbelief that Parker was sentenced to "only probation" for the state charges. (Docket ## 14 at ¶ 30, 38 at 4). Parker believes that because of their alleged dissatisfaction with his sentence, they decided to initiate the instant prosecution. (*Id*.).

B. **Analysis**

The government has broad discretion in making charging decisions, *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. White*, 972 F.2d 16, 18 (2d Cir.), *cert. denied*, 506 U.S. 1026 (1992), and an indictment will not be dismissed for vindictive prosecution unless there is "a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir.) (quoting *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999)), *cert. denied*, 531 U.S. 1015 (2000). "A prosecution is vindictive if it is undertaken in retaliation for the exercise of a statutory or constitutional right." *United States v. Aviv*, 923 F. Supp. 35, 36 (S.D.N.Y. 1996) (citing *United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir.), *cert. denied*, 513 U.S. 879 (1994)).

In this case, Parker argues that the government harbored "actual" animus towards him.[9] (Docket # 38 at 5). Actual vindictiveness requires proof that "(1) the prosecutor harbored

---

[9] Even if Parker had argued that the government's actions created a presumption of vindictiveness, such an argument would be unavailing. To demonstrate a presumption of vindictiveness, a defendant must show that the circumstances of the case create "a realistic likelihood of vindictiveness that would be 'applicable in all cases.'" *United States v. Sanders*, 211 F.3d at 717 (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)); *see also United States v. Johnson*, 171 F.3d at 141. No such showing can be made here where the challenged prosecution was initiated following the conclusion of a prosecution by a separate sovereign. *See United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983) (prosecutions by two independent sovereigns provides no "sound basis for an inference of vindictiveness"); *United States v. Johnson*, 91 F.3d 695, 698-99 (5th Cir. 1996) (no presumption of vindictiveness in commencement of federal prosecution after acquittal on state charges), *cited with approval in Johnson*, 171 F.3d at 141 n.1.

genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse' and (2) he would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (quoting *United States v. Aviv*, 923 F. Supp. at 36), *cert. denied*, 530 U.S. 1222 (2000).

Because "[e]xamin[ation of] the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy," *United States v. Armstrong*, 517 U.S. 456, 465 (1996), the standard for obtaining discovery on a claim of vindictive prosecution is a "rigorous" one. *Sanders*, 211 F.3d at 717 (quoting *United States v. Armstrong*, 517 U.S. at 468). Specifically, the standard demands "some evidence tending to show the existence of the essential elements" of the claim of vindictive prosecution. *Sanders*, 211 F.3d at 717. It follows that the standard for granting an evidentiary hearing should be equally rigorous. *See United States v. Dean*, 119 F. Supp. 2d 81, 84 (D. Conn. 2000) ("[a]bsent some evidence that th[e] federal prosecution was brought with 'genuine animus' to punish the defendant or retaliate against him . . . , [defendant] is not entitled to discovery or an evidentiary hearing on his claim of vindictive prosecution"); *Aviv*, 923 F. Supp. at 37 ("[t]o obtain a hearing, the defendant must 'raise a reasonable doubt that the government acted properly in seeking the indictment'").

Having thoroughly reviewed Parker's *pro se* motions, I find that Parker has neither shown that he is a victim of vindictive prosecution, nor that he is entitled to a hearing on his claim. First, no claim for vindictive prosecution arises from his allegations that he was subjected to a "manhunt" in 2008. At the time, law enforcement officers were attempting to

arrest him in connection with a federal criminal complaint that had been filed in January 2008. That complaint has since been dismissed, and no claim lies in this separate federal prosecution for acts undertaken in connection with that earlier case. I also conclude that his claim that state prosecutors were acting as a "stalking horse" for federal prosecutors in initiating the 2008 state charges also does not give rise to a claim for vindictive prosecution in this case. Those charges were resolved with Parker's guilty plea. *See United States v. Ng*, 699 F.2d at 68 ("under our federal system there can be simultaneous federal and State prosecutions where similar or identical offenses under the two systems of law are committed as the result of particular conduct on the part of the defendant[;] [m]oreover, there is nothing more than exercise of normal prosecutorial discretion involved if the prosecuting attorney is satisfied to drop one prosecution if an adequate result is obtained in the other, or decides to proceed in the second case if an inadequate result is obtained in the first") (quoting *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir. 1982), *cert. denied*, 461 U.S. 907 (1983)).

Finally, I find that Parker's allegation of vindictive prosecution based upon the federal prosecuting authorities' decision, following his sentencing on the state charges, to charge him with criminal conduct that predated the conduct to which he pled guilty in state court is simply too speculative to warrant a hearing or dismissal of the indictment. The bald assertion that an unnamed individual overheard a conversation at an unspecified time between the federal prosecutor and the case agent expressing surprise that he received probation on the state conviction does not, in my opinion, rise to the level of "some evidence" that the subsequent prosecution was motivated solely by actual animus, particularly where the subsequent prosecution arises from separate alleged criminal conduct. *See Johnson*, 171 F.3d at 141 ("when

12

a State brings another indictment supported by evidence against a defendant after an acquittal, the acquittal is a legitimate prosecutorial consideration because the State is not levying punishment for a right exercised but rather for crimes the defendant committed") (quoting *United States v. Esposito*, 968 F.2d 300, 306 (3d Cir. 1992)).

In addition, Parker has adduced no evidence that he would not have been prosecuted absent a vindictive motive. On this basis alone, his claim should be denied. *See United States v. Dean*, 119 F. Supp. 2d at 84; *Aviv*, 923 F. Supp. at 37. Accordingly, I recommend that the district court deny Parker's *pro se* motions to dismiss the indictment on the grounds of vindictive prosecution.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Parker's *pro se* motions to dismiss the indictment **(Docket ## 10, 11, 12, 14)** be **DENIED**. It is my further recommendation that Parker's motions to suppress the out-of-court identifications **(Docket # 32)** be **DENIED**.

                                                               *s/Marian W. Payson*
                                                                MARIAN W. PAYSON
                                                          United States Magistrate Judge

Dated: Rochester, New York
       October   21  , 2009

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[10]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                 *s/Marian W. Payson*
                                                 MARIAN W. PAYSON
                                                 United States Magistrate Judge

Dated: Rochester, New York
        October   21  , 2009

---

[10] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).